# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **Ronald R. Post,** *et al.*, | ) | **CASE NO. 1:11 CV 1533** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **v.** | ) | |
| | ) | <u>**Memorandum of Opinion and Order**</u> |
| **Gary C. Mohr,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## INTRODUCTION

*Pro se* plaintiff Ronald R. Post, on behalf of himself and his fiancé Tracy Lynch a.k.a. Tracy Post, filed this action under 42 U.S.C. § 1983 against Ohio Department of Rehabilitation and Correction ("ODRC") Director Gary C. Mohr, Mansfield Correctional Institution ("MANCI") Warden Terry Tibbals, MANCI Assistant Warden Scott Basquin, MANCI Unit Manager Administrator Marva Allen, MANCI Case Manager Greg Morrow and MANCI John/Jane Does. Mr. Post asserts numerous causes of action based on the conditions of his confinement. He seeks monetary and injunctive relief.

## BACKGROUND

Mr. Post's Complaint consists of a narration of unrelated events that occurred from 2006 to the present date. He is a prisoner on death row at MANCI. On August 28, 2006, Mr. Post

requested a porcelain toilet to replace the stainless steel one provided to death row inmates.  He alleges he is obese and finds it difficult to use the stainless steel model installed in his cell.  His request was denied on September 12, 2006 for security reasons.  He reiterated his request for a porcelain toilet in August 2007.  This request was also denied.

Mr. Post claims he suffered a heart attack in February 2007.  His cardiologist recommended gastric by-pass surgery as a method of weight loss.  He submitted a request for the surgery.  It was denied in November 2007.  He also suggests he would benefit from knee replacement surgery.  This procedure cannot be performed until he loses weight.

Tracy Lynch, a resident of the United Kingdom, began to correspond with Mr. Post.  She contacted Case Manager Greg Morrow and obtained approval to visit Mr. Post in prison. A series of visits took place in November and December 2007.  During one of those visits, Mr. Post asked Ms. Lynch to marry him and she agreed to do so.  Mr. Post was told by both the Chaplain and Warden Stuart Hudson that death row inmates could not marry.  He requested a copy of the relevant policy and discovered that the law library in death row had been closed.  He finally received a copy of the policy from the law library in the general prison population.  Based on the information he obtained, Mr. Post instructed Ms. Lynch to write to the Warden and ask for permission to marry Mr. Post.

Mr. Post and Ms. Lynch exchanged a number of letters on the topic of marriage.  In one letter, Ms. Lynch told Mr. Post about a couple in England who were in a similar predicament.  The husband was incarcerated on a fifteen year sentence and the couple wanted to conceive a child.  The husband in that case sought to facilitate artificial insemination by smuggling genetic material to his wife during a prison visitation.  Ms. Lynch then asked if MANCI would allow them to have a child

in this manner.  Mr. Morrow provided the answer to this question on February 7, 2008 by immediately terminating Ms. Lynch's visitation privileges.  Mr. Post attempted to reverse this decision by informing the authorities that he was rendered sterile by his medications.  He filed numerous grievances, all of which were denied.  Mr. Post contends that the termination of Ms. Lynch's visitation privileges was excessive.  He claims inmates that attempt to smuggle drugs into the prison are given only temporary sanctions.

On October 20, 2009, Mr. Post requested "special visits" with Ms. Lynch for the purpose of getting married.[1]  He states Ms. Lynch received a letter from Warden Smith telling her that Mr. Post could request a special visit if he did not have any conduct reports.  Mr. Post does not indicate whether he made such a request.  It appears from the Complaint that he became seriously ill for a period of time after Ms. Lynch received the letter.

Mr. Post next claims he was sexually assaulted by corrections officers working the third shift.  He claims he was awakened at approximately 3:00 a.m. on February 7, 2009 by individuals who pushed his face down into his pillow and assaulted him sexually.  As his assailants were exiting his cell, he claims he was able to see the face of one of the guards.  He reported the incident to the second shift officers.  A statement was taken from him and he was offered protective custody.  He declined the placement.  He was taken to the prison clinic and examined.  The nurse at the clinic suggested that Mr. Post be taken to a local hospital to allow a rape kit to be taken, but the warden refused to allow him to leave the prison.  Ms. Lynch contacted the Highway Patrol to report the

---

[1] A special visit is one that has been approved by the Managing Officer/designee for someone who may not be an approved visitor, but where significant reasons indicate that such a visit would be beneficial to the offender and would not present a security concern to the institution.  ODRC § 76-VIS-01(E); http://www.drc.state.oh.us/web/visiting.htm

incident.  He alleges evidence collected after the assault was not properly handled by the prison.

Mr. Post contends he had a dental appointment on August 13, 2009.  He claims that because his hands were cuffed in front of him during the appointment, he could not lift himself out of the wheelchair and into the dental chair.  The dentist had to examine Mr. Post in his wheelchair.

Finally, Mr. Post includes several miscellaneous claims in his Complaint.  He contends that when Mr. Tibbals was hired as the warden at MANCI, he upheld the decision of the previous wardens concerning visitations with Ms. Lynch.  He also contends his requests for an exercise bicycle, contact visits with family members, and law books have been denied.

The Complaint lists thirty causes of action; however, several of them are repetitive.  Mr. Post asserts that his Eighth Amendment rights were violated when:

- His request for a porcelain toilet was denied,
- He was denied gastric by-pass surgery,
- He was denied knee replacement surgery,
- He was not permitted to have visitation with Ms. Lynch and her children,
-  Mr. Morrow told others that Mr. Post was gay,
- He was assaulted by corrections officers,
- He was denied proper medical treatment after the assault,
- The evidence of the assault was mishandled, and
- The handcuffs were not removed for his dental appointment.

He claims he was denied Due Process when:

- His request for a porcelain toilet was denied,
- He was denied gastric by-pass and knee replacement surgery,
- His visitation privileges with Ms. Lynch were terminated,
-  Mr. Morrow told others that Mr. Post was gay,
- The evidence of the assault was mishandled, and
-  Mr. Morrow would not notarize a grievance.

He contends he was denied equal protection because death row inmates caught smuggling drugs into prison had only temporary sanctions imposed while his visits with Ms. Lynch were terminated.

-4-

Mr. Post asserts a denial of his First Amendment rights to marry, freedom of speech, and access to the courts.  He claims Warden Tibbals retaliated against him.  Mr. Post asserts the defendants violated  Title II of the Americans with Disabilities Act ("ADA") by denying him the right to marry, terminating his visitations with Ms. Lynch, denying his request for an exercise bicycle, and removing the law library from death row.  He asserts Mr. Mohr violated the ADA by not responding to his letters.

## **STANDARD OF REVIEW**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2]  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.  A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 129 S.Ct. 1937, 1949 (2009).  The factual allegations in the pleading

---

[2]     An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555.  The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*  In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

## ANALYSIS

### I.    Parties

#### A.  Plaintiff Tracy Ann Lynch a.k.a. Post

As an initial matter, Ms. Lynch is not a proper party to this action.  In general, a party may plead and conduct his or her case in person or through a licensed attorney.  *See* 28 U.S.C. § 1654; *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991).[3]  An adult litigant who wishes to proceed *pro se* must personally sign the Complaint to invoke this Court's jurisdiction. *See* 28 U.S.C. § 1654.  Only Mr. Post's signature appears on the Complaint.  He is not a licensed attorney and therefore his signature alone is insufficient to bring Ms. Lynch's claims before the Court.  She, therefore, is dismissed as a party in the action.  The Court will address only those

---

[3]    28 U.S.C. § 1654 provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as by the rules of such courts, respectively, are permitted to manage and conduct cases therein.

claims that pertain to Mr. Post.

### B. ODRC Director Gary Mohr

Mr. Mohr also is not a proper party to this suit.  Mr. Post cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995).  Mr. Post states in his list of causes of action that Mr. Mohr did not respond to a letter that Mr. Post wrote to him. This statement, alone, fails to suggest even a plausible claim for relief against this defendant.  There are no other allegations against Mr. Mohr in the Complaint.  He is dismissed from this action.

## II.     Statute of Limitations

It is apparent on the face of the Complaint that the statute of limitations for most of Mr. Post's claims under 42 U.S.C. § 1983 and under the ADA expired before Mr. Post filed this action. Neither 42 U.S.C. § 1983 nor the ADA contain a specific statute of limitations.  *See LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097, 1105 (6th Cir. 1995)(discussing the statute of limitations period for §1983 claims);  *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 550 (7th Cir. 1996)(discussing the statute of limitations period for ADA claims); *Deck v. City of Toledo*, 56 F. Supp. 886, 889 (N.D. Ohio 1999)(discussing the statute of limitations period for ADA claims). When federal law provides no statute of limitations period, the statute of limitations period of the state cause of action most analogous to the plaintiff's claim is used.  *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985).  Ohio's two year statute of limitations for bodily injury applies to §1983 claims. *LRL Properties*, 55 F. 3d at1105.  District courts in our Circuit have determined that the two Ohio statutes most analogous to Title II of the ADA are either the state disability rights statute, OHIO

REV. CODE §4112.02, or the state personal injury statute, OHIO REV. CODE § 2305.10.  *See McCormack v. Miami University*, No. 1:10 CV 345, 2011 WL 1740018 (S.D. Ohio May 5, 2011); *Frank v. University of Toledo*, 621 F.Supp.2d 475, 483 (N.D. Ohio 2007);  *Deck*, 56 F. Supp. at 890.  Both of these state statutes provide a two year statute of limitations period.  *Id.* at 891.

This action was filed on July 25, 2011.  Mr. Post submitted his request for a porcelain toilet in August 2006.  He discovered in 2007 that the death row law library was closed.  His visitation privileges with Ms. Lynch were terminated on February 7, 2008.  He indicates Mr. Morrow told others Mr. Post was gay in December 2008-January 2009.  He claims he was sexually assaulted by corrections officers on February 7, 2009.  The two year statute of limitations period for these §1983 and ADA claims expired long before this action was filed.

Mr. Post contends he is entitled to equitable tolling of the statute of limitations because he has had to wait up to 21 days for materials to be delivered to him from the law library.  He indicates that this prevented him from filing his claims in a timely manner.  Federal courts have the power to toll the statute of limitations under certain circumstances "not inconsistent with the legislative purpose." *Stewart v. Columbus Southern Power*, No. 2:10-cv-00232, 2010 WL 2667375, at *4, *slip op.* (S.D. Ohio June 30, 2010); *Leake v. University of Cincinnati*, 605 F.2d 255, 259 (6th Cir.1979). The limitations period should not be tolled, however, unless the plaintiff demonstrates extreme circumstances. *Jenkins v. Widnall*, No. 99-3918, 2000 WL 553957, at *2 (6th Cir.2000). The Sixth Circuit has established five factors to consider when determining if the doctrine of equitable tolling should apply: (1) a lack of notice of the filing requirement, (2) lack of constructive knowledge of the filing requirement, (3) diligence in pursuing one's rights, (4) absence of prejudice to the defendant, and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal

requirement.  *Id.* (citing *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir.1998)).  Mr. Post does not indicate he was unaware of the need to file his claim in a timely manner, and offers no suggestion that he has been diligent in trying to bring his claims before the Court.  He does not contend the defendants will not be prejudiced by the delay.  Indeed, there have been many staffing changes in the prison from the time the incidents occurred and the present time.  Mr. Post presents no basis to toll the statute of limitations period for filing claims under the ADA and under 42 U.S.C. §1983.  His claims arising before July 25, 2009 are dismissed as untimely.

## III.  Eighth Amendment

Mr. Post asserts nine claims under the Eighth Amendment.  To the extent that they are not barred by the applicable statute of limitations period, they also fail to state a claim for relief.

Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Supreme Court set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  *Id.*  Seriousness is measured in response to "contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1,8 (1992).  Routine discomforts of prison life do not suffice.  *Id.*  Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9.  The plaintiff must also establish a subjective element showing prison officials acted with a sufficiently culpable state of mind.  *Id.*  Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

-9-

Liability cannot be predicated solely on negligence.  *Id.*  A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

### A. Objectively Serious Deprivation

Of the nine claims Mr. Post asserts, five fail to set forth an objectively serious deprivation. While he indicates he requested a porcelain toilet as a replacement for the metal one in his cell, there is no indication that the metal one is defective.  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987).  An inmate "cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter,*175 F.3d 378, 405 (6th Cir. 1999).

Mr. Post also asserts that the defendants violated his Eighth Amendment rights by terminating his visitation privileges with Ms. Lynch.  To state a claim, Mr. Post needs to allege that prison conditions denied him "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *Wilson*, 501 U.S. at 298.  Visitation with a particular person does not constitute a basic necessity and, therefore, deprivation of that visitation does not violate the Eighth Amendment. *See Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 461 (1989); *Wirsching v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004); *Cooper v. Garcia,* 55 F. Supp.2d 1090, 1099 (S.D. Cal.1999) ("[D]enial of family visitation privileges does not constitute cruel and unusual punishment").

Mr. Post also contends Mr. Morrow told others that Mr. Post was gay.  Verbal harassment is not cognizable as a constitutional deprivation.  *See Ivey*, 832 F.2d. at 955.

While Mr. Post's allegation that he was sexually assaulted by corrections officers arguably

-10-

presents an objectively serious deprivation, his claim that he was denied medical care after the assault and his claim that the evidence of the crime was not handled properly are not Eighth Amendment violations.  He first contends that he was denied appropriate medical care because he was not taken to a hospital.  There is no indication in the Complaint that the medical treatment Mr. Post received at the prison infirmary was inadequate or that he required medical treatment that could only be administered at a hospital.  Similarly, the alleged mishandling of evidence does not suggest a wanton infliction of pain.  It is not the type of deprivation prohibited by the Eighth Amendment.

Mr. Post alleges his Eighth Amendment rights were violated when his handcuffs weren't removed for his dental appointment.  Dental needs fall into the category "of serious medical needs." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010).  Mr. Post, however, was not denied dental treatment.  He does not even claim that the treatment he received was inadequate.  He merely alleges that because the prison required him to be in restraints during the visit, he could not lift himself into the dental chair and had to be treated in his wheelchair.  While it may not have been as comfortable as reclining in a dental chair, it is not the type of extreme deprivation prohibited by the Eighth Amendment as cruel and unusual punishment.  *See Thaddeus-X,* 175 F.3d at 405.

## B. Subjective State of Mind

In addition to having to show that the situation presented an objectively serious deprivation, Mr. Post must also show that the defendant acted with deliberate indifference.  An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm.  *Id.* at 837.  Of Mr. Post's Eighth Amendment claims, seven are not asserted against a defendant named in this action.

Mr. Post alleges Warden Hudson refused his request for a porcelain toilet, and terminated Ms. Lynch's visitation privileges. Mr. Hudson is not a defendant in this action.  He claims ODRC Medical Services Administrator Dr. Mendel S. Reid denied his request for gastric by-pass and knee replacement surgery.  He also is not a defendant in this action.  He contends he was sexually assaulted by corrections officers but does not include them as defendants.  He alleges that Warden Smith would not allow him to be transported to a hospital after the assault and ordered the evidence to be sealed.  Warden Smith is not a defendant.  Finally, he states a Captain or an escorting officer would not remove his handcuffs so he could pull himself into the dental chair.  He does not identify these individuals and does not include them in this action as defendants.   Because Mr. Post has not alleged sufficient facts to plausibly satisfy the objective and subjective elements for any of his Eighth Amendment claims, they are dismissed from this action.

## IV.  Due Process

Mr. Post next asserts six claims for denial of due process.  The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  It does not prohibit every deprivation by the government of a person's life, liberty or property.  *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983.  *Id.*

The Due Process Clause has a procedural component and a substantive one.  The two components are distinct from each other because each has different objectives, and each imposes

-12-

different constitutional limitations on government power.  A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest.  It simply requires that the government provide "due process" before making such a decision.  *Howard v. Grinage*,  82 F.3d 1343, 1349-53 (6th Cir. 1996).  The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process.  *Id*.  Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner."  *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir.1983).  Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient.  *Howard*,  82 F.3d at 1350.  Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action.  *Id*.  It serves as a check on conduct that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights, or as a check on official misconduct which infringes on a "fundamental right," or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscious," as to rise to the level of a constitutional violation. *Howard*, 82 F.3d at 1349.

-13-

### A.  Procedural Due Process

Prisoners have narrower liberty and property interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  The question of what process is due is answered, therefore, only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The Due Process Clause, standing alone, confers no liberty or property interest in freedom from government action taken within the sentence imposed.  *Sandin*, 515 U.S. at 480.  To implicate a cognizable liberty interest in the prison setting, *Sandin* tells us the action must be unusual and substantial "in relation to the ordinary incidents of prison life." *Id.; see also Wilkinson,* 545 U.S. at 223.  There is no reasonable suggestion in the Complaint that Mr. Post has a protected interest in remaining free from harassing comments, in obtaining a notary seal on his grievance, or in receiving a porcelain toilet.  These occurrences are not unusual or substantial in relation to the ordinary incidents of prison life.

Mr. Post also contends he was denied due process in the handling of evidence he provided to prison authorities after he was sexually assaulted.  It is unclear from the pleading what actually happened to this evidence and what Mr. Post thought should happen to it.  It appears that Mr. Post is asserting that he has an interest in having the perpetrators of the crime prosecuted.  The benefit that a third party may receive from having someone else arrested for a crime, however, does not trigger protections under the Due Process Clause.  *Howard ex rel. Estate of Howard v. Bayes*, 457 F.3d 568, 575 (6th Cir. 2006).  Mr. Post has no property interest in the way in which evidence was

-14-

handled.

Mr. Post also asserts that Ms. Lynch's visitation privileges were terminated without due process.  "Denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence."  *Thompson*, 490 U.S. at 461.  This is particularly true if the prison perceives a threat to security.  *Id.*; *Stapleton v. Patton*, No. 07-CV-99-HRW, 2007 WL 3124713, at *5 (E.D.Ky. Oct. 24, 2007).  Ms. Lynch wrote a letter to Mr. Post in which they discussed how the prison would react if she managed to smuggle something out of the prison.  The prison perceived their discussion as a threat to security.  Although Mr. Post contends that this action would be physically impossible to accomplish, neither he nor Ms. Lynch have a liberty interest in continued visitation.

If a protected liberty or property interest is found, procedural due process requires only that a prisoner receive written notice of the hearing at least twenty-four hours in advance, an opportunity when consistent with institutional safety and correctional goals to be heard in support of his position, and a written statement by the factfinder of the reason for the deprivation.  *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).  The Court in this case does not need to decide whether Mr. Post had a protected liberty or property interest in receiving gastric by-pass or knee replacement surgery because he was provided with all of the process that would be due.  He received a recommendation from a cardiologist.  The medical staff at the prison submitted requests on his behalf.  He filed a Medical Health Care Occurrence Report Protocol form.  He brought this to the attention of the ODRC Medical Services Administrator.  His request was denied.  It appears he also filed a grievance with the same request.  He was told the grievance procedure could not substitute for an appeal of the final decision of the Central Office.  The Due Process Clause does

not guarantee a particular result; it only provides notice and a meaningful opportunity to be heard. *See Id.*  There is no indication in the Complaint that Mr. Post was denied procedural due process.

### B.  Substantive Due Process

Mr. Post's substantive due process claims are also subject to dismissal.  Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right. *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993).  In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided.   *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).  A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent.  *Id*. at 833.  The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id.*

Mr. Post's substantive due process claims appear to be based on conduct alleged to be so severe that it shocks the conscience.  Where a specific Amendment provides an explicit source of constitutional protection against a particular sort of governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.*" See Graham v. Connor*, 490 U.S. 386, 395 (1989).  Mr. Post asserted substantially similar claims under the Eighth Amendment, and those claims were already considered by this Court.  His substantive due process claims are dismissed.

### V. Equal Protection

Mr. Post next asserts that terminating Ms. Lynch's visitation privileges was a violation of the Equal Protection Clause. He alleges inmates who were found smuggling drugs into the prison received only temporary visitation sanctions while Ms. Lynch's privileges were stopped indefinitely. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir.2006). When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

Visitation is not a fundamental right, and death row prisoners are not a suspect class. *See Thompson*, 490 U.S. at 461(no right to prison visitation); *Corley v. Burnett*, No. 95-6451, 1997 WL 178876 (6th Cir. April 11, 1997)(death row inmates are not a suspect classification). To state a claim for denial of equal protection, Mr. Post must demonstrate that the prison intentionally treated him differently than other similarly situated inmates without a rational basis for the difference.

Mr. Post claims that death row inmates who smuggled drugs into the prison were given a disciplinary sanction in which their visitation privileges were temporarily suspended. These inmates are not similarly situated to Mr. Post. His visitation privileges were not suspended as a disciplinary sanction. In fact, there is no indication in the Complaint that his visitation privileges were suspended at all. Instead, Ms. Lynch was removed from his approved visitor list after she made a comment in a letter that asked Mr. Post to consider smuggling something to her in the

-17-

course of one of their visits.  ODRC regulations permit the Managing Officer or Designee to deny or suspend the visitation request of any visitor if there is reason to believe that the individual is not obeying the visitation rules, is engaging in sexual contact, or exhibits behavior or actions which the Managing Officer or Designee in his or her discretion, determines may jeopardize the security of the institution.  ODRC Reg. No. 76-VIS-01.  It appears Mr. Post can still visit with others on his approved visitor list.  Mr. Post is not similarly situated to inmates whose visitation privileges were revoked as disciplinary sanctions.  He has not alleged facts to show he received disparate treatment.

### VI.  Right to Marry

Mr. Post also contends that the termination of Ms. Lynch's visitation privileges makes it impossible for her to marry him.  Prisoners have a constitutional right to marry and, therefore, prison regulations that interfere with that right must be reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89-96 (1987)(finding a regulation prohibiting inmate marriage unconstitutional); *see Zablocki v. Redhail*, 434 U.S. 374, 385–86 (1978)(marriage is fundamental right).  The challenged decision in this case, however, does not prohibit Mr. Post from marrying Ms. Lynch.  Although the denial of visitation privileges may make it more difficult for the marriage to occur, they are two separate inquiries.  It is possible for arrangements to be made to accommodate the marriage ceremony, without permanent reinstatement of her visitation privileges.  The focus of this inquiry must be whether any of the named defendants denied Mr. Post's request to marry Ms. Lynch.

The Complaint, however, does not suggest that any of the named defendants explicitly denied such a request.  Mr. Post indicates he was told verbally by Mr. Morrow in 2007 that death row inmates cannot get married at MANCI.  He claims he was told by the Chaplain, again in 2007,

-18-

that death row inmates were not permitted to marry.  He contends he asked Warden Hudson in January 2008 for assistance in getting a marriage license but he does not provide the Warden's response.  Ms. Lynch's visitation privileges were terminated shortly after he made his request.  As noted above, any potential claims against Mr. Morrow, the Chaplain, or Warden Hudson for their actions in 2007 are barred by the applicable statute of limitations period.  Moreover, the Chaplain and Warden Hudson are not defendants in this action.

Mr. Post contends that he requested "special visits" with Ms. Lynch.  He indicates that:

> On December 08, 2009, the warden Keith Smith sent a letter to Tracy in regards to my requests made that Tracy Post and I be allowed to be joined in marriage.  That according to the Special Visit Policy, I can make a request for such a visit.  That if I have not had any tickets or conduct reports, special visit and merit visits are awarded to visit with family.

(Doc. 1 at ¶¶125-126).  That is the extent of the information provided.  Mr. Post does not indicate if the matter was further pursued by him, by Ms. Lynch, or by Warden Smith.  It appears from the Complaint that he became seriously ill shortly after Ms. Lynch received this information.  The Court also notes that Warden Keith Smith is not a party to this action.

Mr. Post states that he sent a formal request for reinstatement of Ms. Lynch's visitation privileges to Warden Tibbals on February 3, 2011.  He was told that Warden Tibbals was going to "maintain the restriction as initially given and supported by the past two wardens... ."  (Doc. 1 at ¶ 147).  There is no indication that Mr. Post raised the issue of marrying Ms. Lynch with Warden Tibbals or that Warden Tibbals denied that request. To state a claim against Warden Tibbals, Mr. Post must allege facts that suggest more than a sheer possibility that the defendant has acted unlawfully.  *Iqbal*, 129 S.Ct. at 1949.  Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of

'entitlement to relief.' " *Id*.  While the facts alleged against Warden Tibbals are not inconsistent with potential liability, they also do not establish liability.  Mr. Post asks the Court to draw conclusions and make inferences from facts which are not pled.  He has not set forth sufficient allegations to state a viable claim against this defendant for denial of the right to marry.

**VII.  Freedom of Speech**

Mr. Post claims generically that the defendants denied his First Amendment right of Freedom of Speech "between a prisoner and a woman in the outside world who the prisoner is asking her to marry him."  (Doc. 1 at ¶ 185).  There is no further explanation of the nature of this claim.  It is possible that Mr. Post is attempting to assert that the denial of visitation privileges to Ms. Lynch interferes with their ability to speak freely to each other.  Again, Mr. Post does not have a constitutional right to visit with Ms. Lynch.  *See Thompson*, 490 U.S. at 461.

Mr. Post may also be claiming his First Amendment rights were violated when his letters from Ms. Lynch were confiscated and read.  In addition to being barred by the applicable statute of limitations, the claim is without merit.  Although inmates do retain the right under the First Amendment to receive mail, that right is more limited in scope than the constitutional rights held by individuals in society at large.  *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001).  Some rights, particularly those found in the First Amendment, are simply at times inconsistent with the status of a prisoner.  *Id.* at 229; *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974); *Turner*, 482 U.S. at 84-85. When a prison regulation impinges on a prisoner's constitutional rights, it will be upheld as valid as long as it is reasonably related to legitimate penological interests.  *Turner*, 482 U.S. at 89; *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir.1992).

-20-

When considering regulations that govern inmate mail, a distinction is drawn between legal mail and non-legal mail.  Legal mail is given much greater protection from unreasonable intrusion. *See e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996).  Conversely, prison officials may open, inspect for contraband, and read a prisoner's incoming non-legal mail provided that the inspection is conducted pursuant to a policy to maintain prison security.  *See Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003); *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir.1993).  Opening and inspecting an inmate's non-legal correspondence aids prison authorities in preventing escape plans, inflammatory materials, or other contraband from getting to prisoners.  *See Turner*, 482 U.S. at 92; *Young v. Weathersby*, No. 1:09-cv-67, 2010 WL 3909463, at * 8 (W.D. Mich. Sept. 15, 2010).  All of those goals directly impact the safety and security of the prison staff and inmates.  The letters from Ms. Lynch are not legal mail and may, therefore, be opened and read by prison officials.  Mr. Post's First Amendment rights were not violated by this action.

To the extent Mr. Post intended to assert another claim for denial of free speech under the First Amendment, he failed to do so.  Principles requiring generous construction of *pro se* pleadings are not without limits.  *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985).  A Complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements.  *See Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).  District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments.  *Beaudett*, 775 F.2d at 1278.  To do so would "require ...[the courts] to explore exhaustively all potential claims of a *pro*

*se* plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* at 1278.  Moreover, Mr. Post's failure to adequately define his claim places an unfair burden on the defendants to speculate on the potential claims that he may be raising against them and the defenses they might assert in response to each of these possible causes of action.  *See Wells v. Brown*, 891 F.2d at 594.  Even liberally construed, the Complaint does not set forth an adequate cause of action for denial of freedom of speech.

## VIII.  Access to the Courts

Mr. Post contends the prison closed the law library in death row thereby denying death row inmates  meaningful access to the courts.  To state a claim for denial of access to the courts, he must allege that particular actions of the defendants prevented him from pursuing, or caused the rejection of, a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  The right of access to the courts is directly related to an underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Mr. Post must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).   In order words, he must demonstrate "actual injury" by showing that his underlying claim was non-frivolous, and that it was frustrated or impeded by defendants.  *Lewis*, 518 U.S. at 353. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the Complaint...." *Christopher*, 536 U.S. at 415.

Here, Mr. Post alleges only in general terms that the law library in the death row section of the prison was inadequate.  Inmates on death row must request materials from the law library in the

general population section of the prison. This is insufficient to state a claim. An inmate cannot establish an actual injury simply by stating his prison's law library or legal assistance program is sub-par in some theoretical sense. *Lewis*, 518 U.S. at 351. The inmate must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue an actual legal claim. *Id.* at 353. Mr. Post has not alleged that any of the defendants prevented him from pursuing a particular non-frivolous action. His claim for denial of access to the courts must be dismissed.

## IX. Retaliation

Mr. Post asserts a vague claim of retaliation. He states he gave notice to the ODRC Director that he "has been retaliated against by the past two wardens and that they condoned the actions of corrupt prison staff." (Doc. 1 at ¶ 208). To state a prima facie case for retaliation, Mr. Post must establish that he engaged in protected conduct, that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Mr. Post's one sentence allegation of retaliation fails to address any of these elements of a cause of action for retaliation. This claim must be dismissed. *Iqbal*, 129 S.Ct. at 1949.

## X. ADA Claims

Finally, Mr. Post asserts he was denied the right to marry, the ability to visit with Ms. Lynch, access to the law library, an exercise bike, and other general accommodations in violation of the Americans with Disabilities Act. Under the ADA, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

-23-

services, programs or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.  An individual is disabled for the purposes of the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities of the individual; [has] a record of such impairment; or [is] regarded as having such an impairment."  42 U.S.C. § 12102(2)(A)-(C).

As an initial matter, Mr. Post does not state what he considers to be his disability.  He states he filed an ADA accommodation request and listed his disability as "<u>both</u> 'Reproductive' and 'Genito-urinary.'" (Doc. 1 at ¶ 166).  He also alleges he is obese and has mobility limitations associated with knee ailments.  He fails to set forth any facts in his pleading to reasonably suggest that any of these conditions "substantially limits one or more major life activities."  42 U.S.C. §12102(2).

Moreover, Mr. Post must also demonstrate that he was denied services or benefits  "by reason of such disability."  42 U.S.C. § 12132.  His claims have little or no connection to a disability.  His claims regarding exercise bicycles and access to the law library have no apparent relation to any of his alleged ailments.  In fact, they were denied to him because he is on death row. Having a death sentence is not a disability.  *See Corley v. Burnett*, No. 95-6451, 1997 WL 178876 (6th Cir. April 11, 1997); *Jeffries v. Reed*, 631 F. Supp. 1212, 1217 (E.D. Wash. 1986).  He was not denied visitation with Ms. Lynch because he is obese, or because he has reproductive or urinary dysfunction.  He was denied visitation with Ms. Lynch because she discussed in a letter the idea of smuggling something out of the prison.  There are no allegations which reasonably suggest that he was denied the services or benefits of the institution because of any of his conditions. Consequently, these claims must be denied.

-24-

Finally, Mr. Post may not bring a claim under Title II of the ADA against a person in his or her individual capacity.  Title II protects certain disabled individuals against discrimination by a "public entity." 42 U.S.C. § 12132.  A "public entity" is defined by statute as "any State or local government."  42 U.S.C. § 12131(1)(A).  There is no personal liability under Title II of the ADA. *Crumbaker v. McLean County Kentucky*, No. 02-5110, 2002 WL 1359364, at *2 (6th Cir. June 20, 2002)(*citing Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000)); *Moore v. Chavez*, Nos. 01-1553, 01-2308, 2002 WL 467939, at *2 (6th Cir. Mar. 26, 2002).  All of the defendants in this case are individuals.  Mr. Post's claims under Title II of the ADA must be dismissed.

**<u>CONCLUSION</u>**

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 1/10/12